**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABEL BRAVO,<br>on behalf of himself, FLSA Collective Plaintiffs<br>and the Class,<br><br>Plaintiff,<br><br>v.<br><br>ESTABLISHED BURGER ONE, LLC, et al.,<br><br>Defendants. | 12 Civ. 9044 (DLC)(JCF) |
| JOSE MARTINEZ, SERGIO CERQUEDA and<br>ENRIQUE ALLENDE,<br>on behalf of himself, FLSA Collective Plaintiffs<br>and the Class,<br><br>Plaintiffs,<br><br>v.<br><br>ESTABLISHED BURGER ONE LLC, et al.,<br><br>Defendants. | 13 Civ. 7532 (DLC)(JCF) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES,**
**ADMINISTRATION FEES AND REIMBURSEMENT OF EXPENSES**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee
30 East 39th Street, 2nd Floor
New York, New York 10016
Telephone:  (212) 465-1188
Fax: (212) 465-1181

# TABLE OF CONTENTS

I. INTRODUCTION…………………………................................…........1

II. CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF
APPROXIMATELY ONE-THIRD OF THE SETTLEMENT FUND……......…........2

A. The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in
Common Fund Cases in the Second Circuit .........................…...............…..........2

B. The Goldberger Factors Support an Award of Approximately One-third of the
Settlement Fund....………………………………..………………….…........5

1. Class Counsel's Time and Labor ...........................….............…...........6

2. Magnitude and Complexity of the Litigation ...........................….……8

3. Risk of Litigation ...........................................................…..........9

4. Quality of Representation ...........................................….…...10

5. Fee in Relation to the Settlement .............................…...12

6. Public Policy Considerations ..............................…14

III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO
CLASS COUNSEL OF APPROXIMATELY ONE-THIRD OF THE SETTLEMENT
FUND ...........................………….........................................…...15

IV. CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF EXPENSES
UNDER THE SETTLEMENT AGREEMENT………………………………….16

V. ADMINISTRATION FEES…………………………………………….…17

VI. CONCLUSION.............................................…...............……………17

# TABLE OF AUTHORITIES

CASES                                                                    Page(s)

A.H. Phillips v. Walling, 324 U.S. 490 (1945).......................................…….........14

In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418 (S.D.N.Y. 2001) …….........4

Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001) ....…...…........8

Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,
522 F.3d 182 (2d Cir. 2008)……………………………………….....................……...4

Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981) ……......................8

In re Boesky Sec. Litig., 888 F. Supp. 551 (S.D.N.Y. 1995)......…...................................15

Brunson v. City of N.Y.,
Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 WL 1876910 (S.D.N.Y. Dec. 22, 2000)....…...10

City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)..........…………….......9

Clark v. Ecolab,
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May
11, 2010), at *8 ......................................................................……13

deMunecas v. Bold Food, LLC,
No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ................…........ passim

Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326 (1980) ........…………….........15

In re EVCI Career Colls. Holding Corp. Sec. Litig.,
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...….........................5

Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005) …......................……..15

In re Gilat Satellite Networks, Ltd.,
No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ........…………........12

In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436 (S.D.N.Y. 2004) ..............16

Goldberger v. Integrated Res. Inc., 209 F.3d 43 (2d Cir. 2000).......…….......... passim

Hicks v. Morgan Stanley,

No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....…………........13, 15

In re Indep. Energy Holdings PLC Sec. Litig.,
302 F. Supp. 2d 180 (S.D.N.Y. 2003) .....................…………….....................17

J.I. Case Co. v. Borak, 377 U.S. 426 (1964) ...............………………..............15

Karpus v. Borelli (In re Interpublic Sec. Litig.),
Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .............4

Khait v. Whirlpool Corp.,
No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)....….......................13, 15

In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577 ..........………........................16

Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................1, 16

McDaniel v. Cnty. of Schenectady, 595 F.3d 411 (2d Cir. 2010).....................................3

McMahon v. Olivier Cheng Catering & Events, LLC,
No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .............…….............3, 14

Mohney v. Shelly's Prime Steak,
No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ..................................13

In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465 (S.D.N.Y. 1998) ....1, 16

Parker v. Jekyll & Hyde Entm't Holdings, LLC,
No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .............…….................15

Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) ..........………….....................15

In re Polaroid ERISA Litig.,
No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ......………….........3, 4

Prasker v. Asia Five Eight LLC,
No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) ..............................…......15

In re Prudential Sec. Inc. Ltd. P'ships Litig., 912 F. Supp. 97 (S.D.N.Y. 1996)....…......8

Rabin v. Concord Assets Grp., Inc.,
No. 89 Civ. 6130, 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ....................................16

In re Ramp Corp. Sec. Litig.,
No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008) ................................3, 4, 5

In re RJR Nabisco, Inc. Sec. Litig.,
MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ............16

Sand v. Greenberg, No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ....2, 3, 14

Savoie v. Merchs. Bank, 166 F.3d 456 (2d Cir. 1999)..................................................4, 15

Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,
258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003).............................…………….................3

In re Sumitomo Copper Litig., 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ............….........3, 14

Taft v. Ackermans, No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) …....11

Varljen v. H.J. Meyers & Co.,
No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000)
...............................................................................................…......................5

Velez v. Majik Cleaning Serv., Inc.,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ....………...............3, 4

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96 (2d Cir. 2005)..........…….......3, 4

Westerfield v. Wash. Mut. Bank,
Nos. 06 Civ. 2817, 08 Civ.0287, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009)
.............................................................................................…13

Willix v. Healthfirst, Inc.,
No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)
.........................................................................................passim

STATUTES

29 U.S.C. § 216(b)...........................................................................…......6

Fair Labor Standards Act ................................................................ passim

## I.      INTRODUCTION

Lee Litigation Group, PLLC ("Class Counsel" or "LLG") respectfully submits this motion for an award of attorneys' fees and expenses in the amount of one-third of the settlement fund (the "Settlement Fund")[1].  This motion is being submitted simultaneously with Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval").[2]

Class Counsel has spent more than 430 attorney and paralegal hours prosecuting this case.  *See* Declaration of C.K. Lee in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses ("Lee Dec.") ¶4.  Multiplying these hours by the hourly rate of each attorney and paralegal results in a lodestar amount of $144,750. *Id*.  Class Counsel's request for one-third of the Settlement Fund – $70,000 – is less than half of the "lodestar", resulting in a negative multiplier.  Courts routinely award counsel three times the lodestar or higher in class action settlements. *See, e.g., Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig*., 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar). Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a positive result.  Lee Dec. ¶6.  For the reasons set forth below, Class Counsel

---

[1]      All capitalized terms (unless otherwise defined), shall have the meanings ascribed to them in the Settlement Agreement and Release dated April 30, 2014.
[2]      For a detailed account of the factual and procedural background of this case, Class Counsel respectfully refers the Court to the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement and the supporting Declaration of C.K. Lee.

respectfully submits that the attorneys' fees and expenses reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

## II.   CLASS COUNSEL IS ENTITLED TO A REASONABLE FEE OF APPROXIMATELY ONE-THIRD OF THE SETTLEMENT FUND.

Class Counsel is entitled to reasonable attorneys' fees to compensate it for its work in recovering unpaid minimum wages and overtime wages on behalf of the class. The request for approximately one-third of the Settlement Fund, is -2x the accrued lodestar (a negative multiplier), and is reasonable and well within the range approved by courts in similar cases.

### A.   The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *deMunecas*, 2010 WL 3322580, at *8; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because

attorneys would be unwilling to take on the risk. *Willix*, 2011 WL 754862, at \*6; *McMahon*, 2010 WL 2399328, at \*7; *Sand*, 2010 WL 69359, at \*3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").  Although there are two ways to compensate attorneys for successful prosecution of statutory claims, the lodestar method and the percentage of the fund method, *McDaniel v. Cnty.of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010), the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Id.*; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005); *deMunecas*, 2010 WL 3322580, at \*8. There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *In re Ramp Corp. Sec. Litig*., No. 05 Civ. 6521, 2008 WL 58938, at \*2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig*., No. 03 Civ. 8335, 2007 WL 2116398, at \*2 (S.D.N.Y 4 July 19, 2007); *Velez v. Majik Cleaning Serv., Inc*., No. 03 Civ. 8698, 2007 WL 7232783, at \*7 (S.D.N.Y. June 25, 2007). The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig*., 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); see also *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,* 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their

clients"); *In re Am. Bank Note Holographics, Inc.,* 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order"). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling because it does not address a common fund fee petition, its reasoning supports use of the percentage of the fund method. *Willix,* 2011 WL 754862, at *7; *deMunecas*, 2010 WL 3322580, at *9. Second, the percentage of the fund method promotes early resolution. It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *see also In re Ramp Corp. Sec. Litig.,* 2008 WL 58938, at *2 n.2; *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *2; *Velez*, 2007 WL 7232783, at *7. The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Karpus v. Borelli (In re Interpublic Sec. Litig.),* Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Id. (quoting Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49

4

(2d Cir. 2000); see also *In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger,* 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

Because the proposed legal fees is more than 50% less than the actual lodestar incurred, Plaintiffs' counsel's legal fees are fair.

**B. The *Goldberger* Factors Support an Award of Approximately One-third of the Settlement Fund.**

Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1) the time and labor expended by counsel;

(2) the magnitude and complexities of the litigation;

(3) the risk of litigation;

(4) the quality of representation;

(5) the requested fee in relation to the settlement; and

(6) public policy considerations.

209 F.3d at 50 (quotation marks omitted). All of the *Goldberger* factors weigh in favor of

granting approval of Class Counsel's fee application.

**1. Class Counsel's Time and Labor**

Class Counsel spent significant effort to achieve the $210,000 settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. See Declaration of C.K. Lee in Support of Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement and Approval of the FLSA Settlement, at ¶5-9. Through discovery, Class Counsel obtained, reviewed, and analyzed comprehensive documentation, including thousands of pages of wage and hour records of the Defendants with respect to over 706 employees. *Id*. at ¶9. This comprehensive discovery enabled Class Counsel to perform a class-wide damage assessment. *Id*. at ¶19.

**The *Bravo* Case**

On December 12, 2012, Named Plaintiff Abel Bravo filed a Class and Collective Action Complaint against Defendants pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) in the U.S. District Court for the Southern District of New York on behalf of himself and others similarly situated, alleging violations of the Fair Labor Standards Act and the New York Labor Law. On February 26, 2013 Named Plaintiff filed a First Amended Complaint. On March 19, 2013 the Good Burger Defendants filed a Motion to Dismiss the Amended Complaint. On April 1, 2013 Named Plaintiff filed a motion to conditionally certify an FLSA collective class. On April 3, 2014 the Established Burger Defendants filed a Motion to Dismiss the Amended Complaint. On May 24, 2013 Named Plaintiff filed a Second Amended Complaint. On June 6, 2013 the

Good Burger Defendants filed a Motion to Dismiss the Second Amended Complaint. On July 10, 2013, the Established Burger Defendants filed a Motion to Dismiss the Second Amended Complaint. On October 18, 2013 the Court granted in part and denied in part Defendants' motions to dismiss. During the briefing of the motion for conditional collective certification, Named Plaintiff Bravo and Defendants (the "Parties") filed a joint motion to stay proceedings due to the parties' ongoing settlement negotiations. On November 5, 2013 the Court Ordered the *Bravo* action to be stayed.

**The *Martinez* Case**

On October 25, 2013, Named Plaintiffs Martinez, Cerqueda and Allende filed a Class and Collective Action Complaint against Defendants pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) in the U.S. District Court for the Southern District of New York on behalf of themselves and others similarly situated, alleging violations of the Fair Labor Standards Act and the New York Labor Law. Due to the parties' ongoing settlement discussions, by Memo Endorsed Order dated November 8, 2013 the Court Ordered the *Martinez* action to be stayed. By Order dated March 6, 2014, the *Martinez* case was consolidated with the *Bravo* case under case number 12-cv-9044.

Since the commencement of this action, the parties have engaged in extensive settlement negotiations. The initial settlement offers from Defendants were only for the Named Plaintiffs and were for nominal value. As the litigation progressed through mediation and continued intensive document exchange, the parties began to explore the possibilities and parameters for a class-wide settlement. In addition to numerous informal telephone conferences with counsel for Defendants, the parties also engaged in a 12-hour in-person mediation before mediator Ruth Raisfeld, Esq. of Alternative Dispute

Resolution Services on February 11, 2014, at which a settlement in principle was reached.

Class Counsel subsequently prepared and submitted a preliminary approval motion, which was approved by the Court on May 12, 2014. In performing all of the aforementioned tasks, Class Counsel spent over 430 hours of attorney and paralegal time for an aggregate lodestar of more than $144,750. Lee Dec. at ¶ 4. These hours are reasonable for a case such as this and were compiled from contemporaneous time records maintained by each attorney and paralegal participating in the case. *Id*. at ¶ 4.

### 2. Magnitude and Complexity of the Litigation.

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996). Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law…These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys.*, Inc., 450 U.S. 728, 743 (1981). Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. See *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001). A trial on the merits

would involve significant factual development. Class Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial and the inevitable appeals process are inherently uncertain in terms of outcome and duration. These mixed factual and legal questions support approval of Class Counsel's attorneys' fee request. See *deMunecas*, 2010 WL 3322580, at *7-8 (awarding attorneys' fees of 33% of the common fund in wage and hour case involving mixed questions of law and fact).

### 3. Risk of Litigation.

The risk of litigation is also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), abrogated by *Goldberger*, 209 F.3d 43 (2d Cir. 2000). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471. Class Counsel undertook to prosecute this action without any assurance of payment for its services, litigating this case on a wholly contingent basis in the face of tremendous risk. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make an enormous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful.

Moreover, the circumstances of this case presented hurdles to a successful recovery as Plaintiffs' claims are highly fact specific and require a plaintiff-friendly interpretation of the law.   Each of the claims of Named Plaintiffs and class members carry significant risk:

(I)     Whether tipped employees properly received and understood their tip credit notice, and whether tipped employees were required to engage in more than 20% of their workday in non-tipped activities are issues of fact.  This fact-intensive inquiry contributed to the complexity of this case.

(II)    Named Plaintiffs and class members brought statutory claims that Defendants failed to provide wage notices, and so owe class members $50 for each week such notices were not provided.  However, because the applicability of the law has not yet been tested, particularly with any applicable defenses, Plaintiffs would have to establish a new precedent to be meritorious.

(III)   Finally, the individual defendants may not be considered "employers" and thus may not have to pay any amounts to satisfy a judgment.

This factor therefore weighs in favor of granting the requested fees. *See*, *e.g.*, *Brunson v. City of N.Y.*, Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 WL 1876910, at *4 (S.D.N.Y. Dec. 22, 2000) (where class counsel "faced significant obstacles…verifying…tasks performed by individual plaintiffs," class counsel was entitled to a premium).

**4. Quality of Representation.**

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the

lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan.

31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467). Defendants agreed to pay a

total of $210,000 to settle this litigation.  Class members that do not opt-out of the

settlement will receive payments from the Settlement Fund as follows:

> (1)     $25 shall be paid to each hourly, non-tipped employee (approximately 531 individuals);

> (2)     $50 shall be paid to each employee who served as a kitchen manager during the relevant time period (approximately 22 individuals);

> (3)     The allocation for delivery employees paid a tip credit hourly rate of pay (approximately 191 individuals) shall be based upon the following formula: (a) divide the number of workweeks worked by each tipped delivery employee in the Class Period by the total number of workweeks worked by all tipped delivery employees in the Class Period, to determine each tipped delivery employee's percentage share of the settlement fund after attorneys' fees and expenses, administration fees and expenses, service awards and payments to class members described above have been deducted, (b) multiply each tipped delivery employee's percentage share by the funds available to the tipped class to compute the participating tipped delivery employee's "Individual Settlement Benefit."

> (4)     Where a class member held more than one occupation with Defendants, he or she will receive the greater of the class awards set forth above.

Any uncashed settlement checks and all amounts remaining in the Net Settlement Fund one-hundred and twenty (120) days after the mailing of the settlement checks will be allocated as follows:

(A)     Within ten (10) days after the expiration of the 120-day period, the Claims Administrator will issue a check for the payment of any additional Claims Administrator expenses or fees.

(B)     Within ten (10) days after the expiration of the period described in Section 4.5(A)(1) of the Settlement Agreement, the Claims Administrator will issue checks to Qualified Class Members who did not receive monies as a result of inadvertent errors or omissions.

(C)     Within twenty (20) days after the expiration of the period described in Section 4.5(A)(2) of the Settlement Agreement, the Claims Administrator will issue

$5,000.00 checks to each of the Named Plaintiffs which represent additional service awards to the extent such monies are available.

(D)     Within ten (10) days after the expiration of the period described in Section 4.5(A)(3) of the Settlement Agreement, the remainder of the Settlement Fund will be used to pay any other unforeseen costs and expenses incurred in relation to the settlement contemplated herein, to the extent such monies are available.

(E)     Within ten (10) days after the expiration of the period described in Section 4.5(A)(4) of the Settlement Agreement, the Claims Administrator will issue a check for any remainder to a charitable *cy pres* donation to Meals on Wheels, to the extent such monies are available.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is a good deal for the class. The settlement amount will be available to class members without the uncertainty and delay of trial.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions. Lee Dec. ¶3. Class Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees.

**5. Fee in Relation to the Settlement.**

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See*, e.g., *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See*, e.g., *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *16 n.41

(finding a 30% fee would not constitute a windfall "given the modest size of the [$20 million] settlement").

The size of the $210,000 settlement weighs in favor of granting the requested fee award of approximately one-third of the Settlement Fund. *See*, e.g., *Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL tip misappropriation case). Courts in this Circuit have routinely granted requests for approximately one-third of the fund in cases with settlement funds substantially larger than this one. *See*, e.g., *Willix*, 2011 WL 754862,at *6 (awarding class counsel one-third of $7,675,000 settlement fund in FLSA and NYLL wage and hour action); *Clark*, 2010 WL 1948198, at *8-9 (awarding class counsel 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Wash. Mut. Bank,* Nos. 06 Civ. 2817, 08 Civ.0287, 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund in nationwide overtime suit).

This is true even though "[a]s the size of the settlement fund increases, the percentage of the fund awarded as fees often decreases so as to prevent a windfall to plaintiffs' attorneys." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (internal quotation marks omitted). A fee of approximately one-third of the Settlement Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862, at *7 (*quoting Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)).

### 6. Public Policy Considerations.

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encouraged experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399. The FLSA and NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective–ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8; *McMahon*, 2010 WL 2399328, at *7. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. Willix, 2011 WL 754862, at *6; *deMunecas*, 2010 WL3322580, at *8; *McMahon*, 2010 WL 2399328, at *7. Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8; *McMahon*, 2010 WL 2399328, at *7; see also *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.") Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar

nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Khait*, 2010 WL 2025106, at *8; *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010). Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank*, 228 F.R.D. at 189.  If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *deMunecas,* 2010 WL 3322580, at *8; Sand, 2010 WL 69359, at *3.

## III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF APPROXIMATELY ONE-THIRD OF THE SETTLEMENT FUND

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.*; *see also Parker*, 2010 WL 532960, at *2. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks*, 2005 WL 2757792, at *8. Courts then consider whether a multiplier is warranted based on factors, such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995). *See also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460; *Parker*, 2010 WL 532960, at

15

*2. Courts regularly award lodestar multipliers between two to six times lodestar. *See*, e.g., *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *27 (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley v.Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465,489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig.*, MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138, at *5-8 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Rabin v. Concord Assets Grp., Inc.*, No. 89 Civ. 6130, 1991 WL 275757, at *1-2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4).

In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case…" *Id.* Class Counsel spent over 430 hours litigating and settling this matter. Lee Dec. ¶4.  The time spent by Class Counsel is described in the Declaration of C.K. Lee and Class Counsel's contemporaneous time records attached thereto. *Id.* at ¶4; Ex. A (Time Records).  The hours worked by Class Counsel result in a lodestar of more than $144,750. Lee Dec. ¶4.

## IV.  CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT

Under the terms of the Settlement Agreement, the attorneys' fees award of $70,000 sought by Class Counsel does not include expenses.  *See* Settlement Agreement ¶ 4.2(A).  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and

necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted). Here, Class Counsel's actual expenses were incidental and necessary to the representation of the Class. Lee Dec. ¶5.  These expenses and costs include filing fees and mediator fees. *Id.*  Based on expenses accrued, Plaintiffs respectfully request that the Court approve Class Counsel's application for reimbursement of expenses of $4,400.

## V.  ADMINISTRATION FEES

CPT Group is a third party entity that the Parties have retained to administer the class settlement.  The Parties have agreed to fees of $16,500 to the Claims Administrator, which is consistent with prevailing market rates.  The Court has approved CPT Group as administrator of the settlement in the Order Granting Plaintiffs' Motion for Preliminary Approval dated May 12, 2014 (ECF Dkt. No. 91 at ¶7).

## VI. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and enter an Order awarding (i) attorneys' fees in the amount of $70,000, which is one-third of the Settlement Fund,  (ii) administration fees to CPT Group in the amount of $16,500 and (iii) reimbursing expenses and costs incurred by Lee Litigation Group, PLLC in the amount of $4,400.

Dated: August 29, 2014

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By: /s/ C.K. Lee_____
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
***Attorneys for Plaintiffs, FLSA Collective
Plaintiffs and the Class***